[Cite as *State v. Gurton*, 2024-Ohio-2971.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230601 |
| | | TRIAL NO.   C-23CRB-13992 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| NATHANIEL GURTON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: August 7, 2024

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *David H. Hoffmann*, Assistant Public Defender, for Defendant-Appellant.

**BERGERON, Judge.**

{¶1} A family holiday evening erupted into chaos when defendant-appellant Nathaniel Gurton and T'Dera Gray, the father of his girlfriend, engaged in a brawl after Mr. Gurton refused to leave Mr. Gray's home. At Mr. Gurton's trial for a charge of assault, the trial court rejected his self-defense argument, deeming the state's witnesses more credible. He now appeals the conviction, arguing that the trial court erred by denying his motion for a continuance to obtain the testimony of an additional witness and by rejecting his self-defense argument. Because we conclude that the denial of Mr. Gurton's continuance request did not violate his due process rights and that his conviction was not against the manifest weight of the evidence, we reject his arguments and affirm the judgment of the trial court.

I.

{¶2} In April 2023, Mr. Gray and Lucretia Allen hosted Easter dinner, joined by their daughter, Za'naya Gray, and Mr. Gurton, her boyfriend, along with Za'naya's daughter and Mr. Gurton's son. Mr. Gray and Ms. Allen allowed Mr. Gurton to join them on the condition that he did not spend the night. In line with that plan, Ms. Allen instructed Za'naya to take him home when the evening wound down. However, in the middle of the night, Ms. Allen woke up to loud banging and hurried to Za'naya's room to find it locked. She picked the lock and found Za'naya face down on the bed, covering her head with a hoodie, while Mr. Gurton was standing in the room with his son. Ms. Allen eventually saw that Za'naya had a black eye and asked Mr. Gurton whether he hit her, but he did not respond. Ms. Allen then ordered Mr. Gurton to leave, and he refused, allegedly shouting "no" in her face. She then called 911 and, according to her testimony, Mr. Gurton slapped the phone out of her hand. But Mr. Gurton testified

2

that he never fought with Ms. Allen. She yelled her address to the dispatcher, and police arrived a short while later.

{¶3} Mr. Gray testified that the noise of the feuding woke him up and that he was attacked by Mr. Gurton upon approaching Za'naya's room. He saw Mr. Gurton and Ms. Allen face to face and asked what was going on, and then Mr. Gurton allegedly punched him in the right eye. Ms. Allen also testified that Mr. Gurton punched Mr. Gray first. In Mr. Gurton's version of the story, however, Ms. Allen left to tell Mr. Gray that he put his hands on Za'naya and that he refused to leave. He claimed that Mr. Gray was intoxicated after drinking liquor all night, stumbled down the hall after Ms. Allen summoned him, and tried to hit him first. Mr. Gray admitted to drinking several beers before going to bed but denied that he was intoxicated or that he started the melee.

{¶4} Ms. Allen and Mr. Gray testified that he and Mr. Gurton tussled and fought throughout the house for five to ten minutes and that Mr. Gurton repeatedly punched Mr. Gray. They also testified that at one point, Mr. Gurton picked up a chair and lifted it over his head, with the intent to strike Mr. Gray, and that Ms. Allen then grabbed the chair to prevent the strike. Mr. Gurton denied ever grabbing a chair. Mr. Gray claimed that Mr. Gurton threw him into the doorway of the bathroom near the end of the fight, causing him to hit his forehead and bleed. Photos entered into evidence at trial showed blood splattered on the hallway and bathroom walls and Mr. Gray's injuries: small gashes to his forehead and right cheek and a bruised right eye. Before police arrived, Mr. Gurton left the house with his child and Za'naya and was not identified and arrested by police until several months later.

3

{¶5} Prior to Mr. Gurton's trial and sentencing on October 19, 2023, the trial court granted him two continuances—first on September 27, owing to an eve-of-trial discovery submission by the state, and second on October 5 because defense counsel was sitting second chair for a trial in another case. On the day of his trial, Mr. Gurton requested a continuance in progress so the defense could obtain the presence of a missing witness, Za'naya, who he claimed (without adding details) would provide beneficial testimony for his defense. Defense counsel explained that he had spoken with Za'naya on October 16 and that she said she would attend and did not need to be subpoenaed. The state responded that it had subpoenaed Za'naya for October 19, expecting favorable testimony for its side, and the record reflects that a subpoena was served at her residence on October 11. It explained that, according to Za'naya's parents, she was in West Virginia, and there was no reason to expect that she would come to court at a future trial date. At the conclusion of the state's case, the court denied the request for a continuance in progress on the grounds that defense counsel did not issue a subpoena and had months to work with Za'naya and obtain her presence. It stated, in sum, that "absolutely nothing was done to obtain her presence at trial."

{¶6} The court found Mr. Gurton guilty of misdemeanor assault, in violation of R.C. 2903.13, finding no evidence to support his self-defense argument and finding the testimony from the state's witnesses consistent and credible. It sentenced him to 180 days in jail, and Mr. Gurton now appeals.

II.

{¶7} Mr. Gurton first appeals the trial court's denial of his motion for a continuance in progress on the day of trial, which would have allowed the trial to

4

progress and then resume later. Courts review the denial of a continuance as a potential violation of a defendant's procedural due process rights under the Fourteenth Amendment to the U.S. Constitution. *See State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981), quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964) (" 'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.' "). The grant or denial of a motion for a continuance "is entrusted to the broad, sound discretion of the trial judge," and is reviewed for an abuse of that discretion. *Id.*; *see State v. Austin*, 1st Dist. Hamilton Nos. C-210140 and C-210141, 2021-Ohio-3608, ¶ 5. To determine whether a trial court abused its discretion in denying a continuance, reviewing courts consider several factors, ultimately weighing the potential prejudice to the defendant against other factors such as the court's control over its docket and the public's interest in prompt and efficient justice. *Id.*

> {¶8} Relevant factors under this test include:
>
> the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.

*Id.* at 67-68.

{¶9} We find several of these factors persuasive as support for the trial court's decision to deny the continuance, especially the extent to which Mr. Gurton contributed to the circumstances giving rise to the request because he failed to subpoena Za'naya or to otherwise ensure her presence. When a party seeks a continuance to obtain the presence and testimony of a witness, " 'it is incumbent upon the moving party to show that such witnesses would have given substantial favorable evidence and that they were available and willing to testify.' " *State v. Komadina*, 9th Dist. Lorain No. 02CA008104, 2003-Ohio-1800, ¶ 32, quoting *State v. Meek*, 9th Dist. Lorain No. 96CA006454, 1997 Ohio App. LEXIS 193, 4 (Jan. 22, 1997). Even though the state subpoenaed Za'naya to attend the October 19 trial and she apparently defied the subpoena, for the purposes of obtaining a continuance due to her absence, it was Mr. Gurton's responsibility to prove that she was available and willing to testify. *See City of Columbus v. C.G.*, 10th Dist. Franklin No. 19AP-121, 2021-Ohio-71, ¶ 60 ("A defendant relies on a prosecution subpoena at his or her own peril, as the prosecution ultimately may choose not to call its subpoenaed witness as part of its case, or, as in this case, the witness may choose to ignore that subpoena."). Defense counsel merely averred that Za'naya was willing to attend and relied "in good faith upon her assertion that she would appear." The state explained that Za'naya's parents believed that she was in West Virginia and would not attend the trial at any point in the future. Lacking any further information from Mr. Gurton that Za'naya would attend the trial in the future, this factor weighs in favor of denying the continuance, especially since her identity and involvement was known for months.

{¶10} Second, Mr. Gurton failed to establish that the delay would serve a legitimate purpose, which was his obligation as the moving party. *See Komadina* at ¶

32. Mr. Gurton did not proffer what testimony he expected Za'naya to provide—he merely claimed that it would be favorable to him. He now argues that elaborating further would have been "tactically improvident," but offers no case law to suggest a proffer would have been inappropriate. The lack of substance supports the conclusion that the delay would have been "dilatory" because the trial court had little reason to believe that the testimony would have influenced the outcome. *See City of Columbus* at ¶ 58 ("Because defense counsel did not make a timely proffer of [the witness's] anticipated testimony, the trial court could not have known how or why her testimony was vital to appellant's defense when it denied the continuance.").

**{¶11}** Third, this was Mr. Gurton's third request for a continuance of the trial, and he received the first two as requested. The first was for a more legitimate reason (to process new discovery from the state), while the second was more debatable (defense counsel was sitting second chair at another trial after declaring a week prior that he would be available for Mr. Gurton's trial on this date). This factor also weighs in favor of denying the continuance request.

**{¶12}** The remaining factors are not substantially influential. Mr. Gurton did not request a specific length of continuance to obtain Za'naya's presence and testimony, and nothing in the record indicates how long of a delay might have been required. Additionally, the inconvenience factor is mixed. Although postponing the trial outcome for one additional witness's testimony delays justice and requires rescheduling of the attorneys, the court, and other interested parties, the delay would not have required a new trial (the request was to continue "in progress") and theoretically could be outweighed by the need for key testimony that was unavailable for a good reason. But without information about Za'naya's testimony and with doubts

7

about whether she would testify in the future, in addition to Mr. Gurton's fault in failing to obtain her presence, the inconvenience weighs slightly in favor of denying the request.

{¶13} Ultimately, Mr. Gurton contributed to the reason for the request by not subpoenaing her, did not provide information about Za'naya's testimony or how he would ensure her attendance in the future, and did not show how he was prejudiced without her testimony. Therefore, the trial court did not abuse its discretion in denying the continuance and concluding the trial, and we overrule Mr. Gurton's first assignment of error.

III.

{¶14} Mr. Gurton also argues that the trial court erred in rejecting his self-defense claim. A criminal defendant claiming that he acted in self-defense bears an initial burden of production to demonstrate that "there is evidence presented that tends to support that the [defendant] used the force in self-defense." R.C. 2901.05(B). To meet his initial burden, the defendant must show "legally sufficient evidence" for each element of self-defense, which means "the defendant's evidence and any reasonable inferences about that evidence would allow a rational trier of fact to find all the elements of a self-defense claim when viewed in the light most favorable to the defendant." *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, 216 N.E.3d 653, ¶ 25; *see State v. Corrado*, 1st Dist. Hamilton Nos. C-230635 and C-230636, 2024-Ohio-2575, ¶ 12. We review whether the defendant met his self-defense burden of production under a de novo standard of review. *State v. Williams*, 1st Dist. Hamilton No. C-190380, 2020-Ohio-5245, ¶ 5.

{¶15} If the defendant satisfies his burden, the burden shifts to the state, which then must prove beyond a reasonable doubt that at least one of the elements of self-defense was not met. R.C. 2901.05(B)(1); *see Messenger* at ¶ 17, 26. We review whether the state met its burden of persuasion through a manifest weight of the evidence lens. *Messenger* at ¶ 26. Thus, "we will only reverse if the trial court 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Williams* at ¶ 19, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). " 'When conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony.' " *State v. Robinson*, 12th Dist. Butler No. CA2018-08-163, 2019-Ohio-3144, ¶ 29, quoting *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17; *see State v. Ham*, 1st Dist. Hamilton No. C-170043, 2017-Ohio-9189, ¶ 21 ("[I]t is well settled law that matters as to the credibility of witnesses are for the trier of fact to resolve.").

{¶16} The elements of self-defense for the use of nondeadly force are:

(1) the defendant was not at fault in creating the altercation; (2) the defendant had reasonable grounds to believe that she was in imminent danger of bodily harm; and (3) the only way to protect herself from the danger was using force and she did not use more force than was reasonably necessary to defend herself against the imminent danger of bodily harm.

*State v. Ridley*, 1st Dist. Hamilton No. C-210458, 2022-Ohio-2561, ¶ 15.

{¶17} Here, Mr. Gurton claimed that Mr. Gray ran at him and tried to punch him first, requiring the use of force in response. This of course differs from Mr. Gray's

9

and Ms. Allen's accounts that Mr. Gurton threw the first punch and from Ms. Allen's testimony that he slapped her phone out of her hand. But if the trier of fact believed Mr. Gurton's testimony, it rationally could have concluded that he was not at fault in creating the physical fight between him and Mr. Gray. Further, if believed, Mr. Gurton reasonably could have feared imminent bodily harm from Mr. Gray charging at him and attacking him first, and it would have been reasonable to conclude that he needed to use some force to respond to that threat. Ultimately, Mr. Gurton met his burden of production because he presented at least some evidence that tends to support his self-defense argument, viewed in the light most favorable to him. Therefore, the burden shifted to the state to prove beyond a reasonable doubt that he did not act in self-defense.

{¶18} Turning to the state's burden, the trial court's conclusion that Ms. Allen's and Mr. Gray's testimonies were consistent and credible is supported by the record. They both testified that Mr. Gray entered the situation upon hearing the altercation (whether summoned by Ms. Allen specifically or by the noise generally) and that they observed Mr. Gurton throw the first punch at Mr. Gray. The photos of Mr. Gray's injury to his right cheek and eye corresponded with this punch, but the injury could have arisen at any point during the fight. Nonetheless, Mr. Gurton provides no other evidence, other than his own testimony, that Mr. Gray attacked him first. *See State v. Johnson*, 9th Dist. Lorain No. 13CA010496, 2015-Ohio-1689, ¶ 15 ("[T]he mere fact that [the defendant] offered his own self-serving contradictory testimony does not support a reversal on manifest weight grounds."). Additionally, Ms. Allen testified that she asked Mr. Gurton to leave after she heard him and Za'naya

arguing, and Mr. Gurton concedes the point that she no longer welcomed him in the house.

{¶19} Ultimately, determining who initiated the physical part of this altercation is heavily dependent on the credibility of the witnesses, including their demeanor when testifying, and nothing in the record leads us to second guess the trial court's conclusion that Mr. Gurton initiated the confrontation. *See Ham*, 1st Dist. Hamilton No. C-170043, 2017-Ohio-9189, at ¶ 21; *Robinson*, 12th Dist. Butler No. CA2018-08-163, 2019-Ohio-3144, at ¶ 29; *State v. Harrison*, 1st Dist. Hamilton No. C-220171, 2023-Ohio-471, ¶ 12-14. Mr. Gray's and Ms. Allen's testimonies were reasonably consistent with each other and with the physical evidence, and Mr. Gurton offered little beyond his own testimony to counter their version of events. Therefore, the state met its burden of disproving Mr. Gurton's argument that he was not at fault in creating the altercation. Having concluded that the state met its burden on that element, we need not address the other two self-defense elements. *State v. Gibson*, 1st Dist. Hamilton No. C-220283, 2023-Ohio-1640, ¶ 12, quoting *State v. Smith*, 1st Dist. Hamilton No. C-190507, 2020-Ohio-4976, ¶ 51 (" 'The state need only disprove one of the elements of self-defense beyond a reasonable doubt.' ").

{¶20} Therefore, the trial court did not lose its way in rejecting Mr. Gurton's self-defense argument and by finding him guilty of misdemeanor assault, in violation of R.C. 2903.13. We thus overrule his second assignment of error.

* * *

{¶21} The trial court did not err by denying Mr. Gurton's request for a continuance in progress and by rejecting his self-defense argument and finding him

guilty of misdemeanor assault. We therefore overrule his two assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

**ZAYAS, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.